UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIAN COVERT<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ITT EDUCATIONAL SERVICES, INC.,<br>d/b/a ITT TECHNICAL INSTITUTE, a<br>Delaware corporation,<br><br>　　　　　Defendant. | Case No. 1:10-CV-00393-EJL-MHW<br><br>**MEMORANDUM ORDER** |

**INTRODUCTION**

Pending before the Court in the above entitled matter is the Defendant's Motion for

Summary Judgment. The parties have submitted responsive briefing on the Motion and the

matter is now ripe for the Court's consideration. Having fully reviewed the record herein, the

Court finds that the facts and legal arguments are adequately presented in the briefs and

record. Accordingly, in the interest of avoiding further delay, and because the Court

conclusively finds that the decisional process would not be significantly aided by oral

argument, this Motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Robert Covert's Complaint alleges a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for failure to pay overtime compensation. (Dkt. 1.) Mr. Covert was employed by Defendant ITT Educations Services, Inc ("ITT") as a recruiter/admissions representative from November 9, 2007 to March of 2010. (Dkt. 15-1 at p. 3.) Mr. Covert alleges he worked over his lunch hour and beyond his scheduled shift hours on a regular basis, working an average of 50-55 hours per week during the busy times of the year. (Dkt. 1 at ¶¶ 8, 10.) Mr. Covert asserts he, as well as his co-workers, were told by their supervisors to keep track of their overtime separately from their regular hours recorded on handwritten timecards and that they would receive comp time for the overtime hours. (Dkt. 1 at ¶ 11.) If overtime hours were reported on the timecard, Mr. Covert alleges, his superior would instruct him to edit his time card to remove the overtime hours or his timecard would not be signed and he would not be paid. (Dkt. 1 at ¶ 13.) As a result, Mr. Covert claims he suffered lost wages and overtime pay and has filed this FLSA claim to recover such damages. ITT has filed the instant Motion for Summary Judgment arguing the claim should be dismissed as a matter of law. The Court finds as follows.

**STANDARD OF LAW**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party moving for summary judgment has the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting evidence to show that a genuine issue of fact remains. The party opposing the motion for summary judgment may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 248. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial" then summary judgment is proper as "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

---

[1] *See also,* Rule 56(e) which provides:

(e)    **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
    (1)    give an opportunity to properly support or address the fact;
    (2)    consider the fact undisputed for purposes of the motion;
    (3)    grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
    (4)    issue any other appropriate order.

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted). Of course, when applying the above standard, the Court must view all of the evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

### 1.    FLSA Claim

The FLSA requires an employer to pay overtime compensation to employees who work more than forty hours per week unless certain FLSA exemptions apply. *See* 29 U.S.C. § 207(a)(1). Under Section 7 of the FLSA, "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *Solis v. Best Miracle Corp.*, 709 F.Supp.2d 843, 850 (C.D. Cal. 2010) (quoting 29 U.S.C. § 207).

The plaintiff in an FLSA action bears the burden of proving as a matter of just and reasonable inference that he or she performed work for an employer, and was not properly compensated. *Chao v. Westside Drywall, Inc.*, 709 F.Supp.2d 1037, 1060 (D.Or. 2010) (citing *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-877 (1946)); *see also Fenters v. Yosemite*

*Chevron*, 761 F.Supp.2d 957, 1001-02 (E.D. Cal. 2010) ("An employee seeking to recover unpaid minimum wages or overtime under the FLSA 'has the burden of proving that he performed work for which he was not properly compensated.'") (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687); *see also Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986); *Ulin v. ALAEA-72, Inc.*, No. C-09-3160-EDL, 2011 WL 723617, at *11-12 (Feb. 23, 2011 N.D. Cal. 2011); *see also Peterson v. Snodgrass*, 683 F.Supp.2d 1107, 1125-26 (D.Or. 2010). "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference." *Mt. Clemens Pottery*, 328 U.S. at 687. "In view of the remedial purpose of the FLSA and the employer's statutory obligation to keep proper records of wages, hours and other conditions and practices of employment, this burden is not to be 'an impossible hurdle for the employee.'" *Fenters*, 761 F.Supp.2d at 1002.

The burden of record-keeping is on the employer. *See* 29 U.S.C. § 211(c).[2] "If an employee establishes that overtime hours and wages were not recorded by the employer as required by the FLSA, 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient

---

[2] Section 11(c) of the FLSA requires an employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him...." 29 U.S.C. § 211(c). Specifically, employers must keep accurate records of 1) the total daily and weekly hours employees work, 2) employees' regular hourly rates of pay for each week that overtime is worked, 3) the total daily or weekly straight time earnings, and 4) the total weekly premium pay for overtime hours. *Solis*, 709 F.Supp.2d at 850 n. 40 (citing 29 C.F.R. §§ 516.2, 516.5).

evidence to show the amount and extent of that work as a matter of a just and reasonable inference.'" *Fenters*, 761 F.Supp.2d at 1002; *see also Peterson*, 683 F.Supp.2d at 1126 (quoting *Mt. Clemens Pottery*, 328 U.S. at 687-88) ("When an employer fails to keep adequate employment records, an employee may make a prima facie case of overtime violations if she produces 'sufficient evidence to show the amount and extent of [her] work as a matter of just and reasonable inference.'"). "The burden then shifts to the employer to show the precise number of hours worked or to present evidence sufficient to negate 'the reasonableness of the inference to be drawn from the employee's evidence.'" *Id.* (quoting *Mt. Clemens Pottery*, 328 U.S. at 688); *see also Peterson*, 683 F.Supp.2d at 1126 (citing *Brock*, 790 F.2d at 1448) ("Once the employee establishes a prima facie case, the burden then shifts back to the employer to rebut the number of hours alleged by presenting specific evidence disproving those hours."). "An employee is entitled to summary judgment based upon a reasonable estimate of hours worked when there is no factual dispute that the employer failed to keep adequate records of time worked and the employer submits no other evidence negating the reasonable inference to be drawn from the employee's evidence." *Peterson*, 683 F.Supp.2d at 1126. "If the employer fails to make such a showing, the court 'may then award damages to the employee, even though the result be only approximate.'" *Fenters*, 761 F.Supp.2d at 1002.

Here, ITT argues because it has maintained accurate detailed records of hours worked, it is Mr. Covert's burden to offer sufficiently particular evidence to satisfy his burden of proving he performed the work for which he claims he was not properly compensated. (Dkt.

12-1 at 5.) Thus, it argues, the burden shifting detailed above does not apply and it is Mr. Covert's burden to prove the prima facie case for his FLSA claim. (Dkt. 12-1 at 3-4.) Further, ITT argues the conclusory allegations made by Mr. Covert are insufficient to satisfy this burden and overcome summary judgment. (Dkt. 12-1 at 7.) In response, Mr. Covert argues the accuracy of the time records is in dispute and, therefore, summary judgment is not proper. (Dkt. 15 at 3-6.)

The Court finds a genuine issue of material fact exists as to the accuracy of the records. The timecard records are the primary basis for ITT's Motion. (Dkt. 12.) ITT maintains the timecards are accurate, pointing to its policy requiring Mr. Covert to accurately record his time and to request overtime in advance; Mr. Covert's admission that the timecards were accurate as to his recorded vacation, sick, holiday time, and even some instances of pre-approved overtime; Mr. Covert's knowledge that he could confidentially report improper actions by his supervisors; Mr. Covert's failure to make any such report; and the fact that Mr. Covert signed off on the timecards indicating that they were accurately recorded. (Dkt. 16 at 5.)

In response, Mr. Covert points to his own deposition and Declaration as well as that of four of his co-workers in support of his position that they were all told by their superior to not record their overtime on the timecards and that they would instead receive comp time for the overtime. (Dkt. 15 at 5) (Dkt. 15-2 through 15-6.) Thus, Mr. Covert maintains the timecards are not accurate and a genuine issue of material fact exists. ITT challenges the materials relied upon by Mr. Covert. (Dkt. 16 at 4-8.) ITT argues Mr. Covert's response and

the Declarations are insufficient because they lack the specificity or particularity to overcome summary judgment.

> Rule 56 requires:
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment, but must set forth by affidavit or other appropriate evidence specific facts showing there is a genuine issue for trial. The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some significant probative evidence tending to support the complaint." *Fenters*, 761 F.Supp.2d at 964 (citation and quotations omitted). The question to be resolved on summary judgment "is not whether the 'evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.'" *Fenters*, 761 F.Supp.2d at 964 (quoting *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995)). "This requires more than the 'mere existence of a scintilla of evidence in support of the plaintiff's position'; there must be 'evidence on which the jury could reasonably find for the plaintiff.' 'The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must

be to avoid summary judgment.'" *Id.*

The Court finds the materials provided by Mr. Covert are sufficient to put into question the accuracy of the records relied upon by ITT in support of summary judgment. Mr. Covert has cited to particular portions of the record to support a finding that the accuracy of the timecards is in dispute here. Mr. Covert points to his own deposition testimony as well as the Declarations of four of his co-workers. (Dkt. 15-2 through 15-6.) Mr. Covert's Declaration states "I was told by Lorea Feldman, one of my supervisors not to write [overtime] on my time card. I was also told that I should write a lunch hour on my time card even though I did not take lunch breaks." (DKt. 15-2 at ¶ 5.) Similarly, the Declaration of Bridget Fries states the ITT records were not accurate and the "hours I wrote down were not actually the hours I worked. I was told by supervisors, particularly Lorea Feldman that we (admissions representatives) were not to write down any overtime, even if we worked it, unless it was authorized in advance." (Dkt. 15-3 at ¶ 3.) Ms. Fries goes on to state Ms. Feldman told them to "keep track of the overtime we worked and that we could take time off with pay at some future date. This was known as comp time. If we worked an hour of overtime, we were told we would get an hour of comp time...." (Dkt. 15-3 at ¶ 4.) The Declarations of Steve Grimes, Gerald Mayes, and Charles Mercier are in accord. (Dkt. 15-4 through 15-6.) Though ITT argues the statements are conclusory, generalized, and speculative, the Court finds them to be sufficient to overcome summary judgment. (Dkt. 16 at 4-8.) The five Declarations, including Mr. Coverts, corroborate each other's statements that they were told to alter their timecards and not report overtime. (Dkt. 15-2 through 15-6.)

Whether the jury ultimately believes this testimony is not decided here.

ITT points to *Fenters v. Yosemite Chevron, et al.*, 761 F.Supp.2d 957, 1001-02 (E.D. Cal. 2010), wherein the court granted summary judgment on the plaintiff's § 201 claim seeking compensation for unpaid overtime and other compensation. (Dkt. 12-1 at 8.) In *Fenters*, the court granted the employer summary judgment concluding the employee's "conclusory deposition testimony that she was not paid overtime and the absence of evidence that [the employer's] timecards are inaccurate fail to make a prima facie case. She has no evidence as to dates or times proving that she worked any uncompensated overtime hours as a matter of reasonable inference. She testified at her deposition that there could be zero hours of overtime that have been unpaid." *Fenters*, 761 F.Supp.2d at 1002. In this case, however, Mr. Covert has presented not only his own deposition testimony but also the declarations of four other co-workers to support his assertions that 1) the timecards were inaccurate and 2) that he had worked uncompensated overtime hours. (Dkt. 15 at 10-11.)

The Court finds Mr. Covert's materials are sufficient to raise a genuine issue of material fact. The challenges to Mr. Covert's materials raised by ITT go to the credibility of the witnesses which is a determination for the fact finder to render at trial. *See Morales v. Landis Const. Corp.*, 715 F.Supp.2d 86, 88 (D.D.C. 2010) (Reasoning that when considering a motion for summary judgment, the court "must eschew making credibility determinations or weighing the evidence.") (citation and quotations omitted).[3] Based on the evidence

---

[3] In its reply brief, ITT twice argues the statements in the Declarations should be stricken as they "do not satisfy Rule 56" and "are not cognizable on summary judgment."

presented on this Motion, the Court finds that if the jury believes Mr. Covert's witnesses, it could reasonably return a verdict in his favor. *Fenters*, 761 F.Supp.2d at 964. As such, the Court concludes the Declarations and testimony provided by Mr. Covert are sufficient at this stage to raise a question of fact as to the accuracy of the records and, therefore, the Motion for Summary Judgment is denied on this basis. At trial, the evidence submitted by ITT concerning its overtime policies and these individuals' acknowledgments regarding those policies will likely weigh against the credibility of these witnesses. Such weighing of credibility is a determination that must be made by the jury.

Even if the Court were to find that ITT is correct and the timecards were accurate, the Court would still deny the Motion. The burden at trial would be on Mr. Covert to "prove[] that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference." *Mt. Clemens Pottery*, 328 U.S. at 687. Mr. Covert has come forward with evidence upon which a jury could return a verdict in his favor. *Fenters*, 761 F.Supp.2d at 964. The Court finds, at least for purposes of this Motion, that Mr. Covert has pointed to evidence raising a question of fact as to whether he worked uncompensated

---

(Dkt. 16 at 1, 7.) ITT cites to a case discussing the preservation of a hearsay objection on appeal of an order granting defendants' motions for summary judgment. (Dkt. 16 at 7) (citing *Pfingston v. Ronan Eng. Co.*, 284 F.3d 999, 1003 (9th Cir. 2002).) The Court finds this broad request to strike lacks substance and is simply too generalized in nature so as to allow the Court to make such a ruling. As such, the Court will not order the Declarations stricken. The Court has, however, considered and discussed ITT's arguments regarding these materials in terms of whether they are sufficient to satisfy Rule 56.

overtime. *See Brock*, 790 F.2d at 1447-48.

The Declarations filed by Mr. Covert all state that Mr. Covert regularly worked in excess of forty hours a week and through his lunch hour. (Dkt. 15-2 through 15-6.) Though the statements in the Declarations are somewhat qualified in terms of their observations of Mr. Covert's work hours, the burden is not on the employees to prove the precise extent of uncompensated work. *Mt. Clemens Pottery*, 328 U.S. at 687. Here, Mr. Covert has pointed to testimony and Declarations wherein multiple employees of ITT state Mr. Covert regularly worked through his lunch hour and beyond his scheduled shift hours. (Dkt. 15-2 through 15-6.) Again, although ITT disputes this testimony, the fact remains at this stage that several employees have attested to the fact that Mr. Covert, like many other admission representatives, worked overtime that was not recorded on time sheets. (Dkt. 15.) Whether such qualified testimony persuades a jury remains to be seen.

ITT further argues that Mr. Covert has failed in his burden to show that ITT knew he was working overtime hours for which he was not paid. (Dkt. 12-1 at 10.) Claims under § 207 of the FLSA seeking overtime pay require that the employer knew the employee was working uncompensated hours in excess of 40 hours per week. *See Forrester v. Roth's I.G.A. Food liner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (Section 203(g) of the FLSA defines "employ" to include "suffer or permit to work" which courts have interpreted to mean "with the knowledge of the employer.") (citation omitted). "[A]n employer who knows or should have known that an employee is or was working overtime must comply with the provisions of § 207. An employer who is armed with this knowledge cannot stand idly by and allow an

employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Id.*

ITT maintains it had no knowledge that Mr. Covert had been working uncompensated overtime hours. "An employer must have an opportunity to comply with the provisions of the FLSA." *Forester*, 646 F.2d at 414. "[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Id*. Likewise, "where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a)." *Forester*, 646 F.2d at 414-15.[4] However, an employer may not "escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation." *Forester*, 646 F.2d at 414-15.

Again, ITT points out that Mr. Covert: admitted no one told him he was required to work overtime, knew of the overtime policy, signed his timecards, and never reported any

---

[4] "In *Forrester*, the plaintiff 'deliberately omitted the inclusion of those [ overtime] hours from his time sheet even though he admittedly knew he would have been paid for those hours.'" *Washington v. Crab Addison, Inc.*, No. C 08-5551 PJH, 2010 WL 2528963, at * 3 (N.D. Cal. June 18, 2010) (discussing *Forrester*, 646 F. 2d at 414). "Accordingly, the court did not conclude that an employer's actual knowledge of the overtime was a per se element of the claim that needed to be pled to survive a motion to dismiss. Rather, it held simply that employers are not liable for violations of § 207(a) where the acts of an employee prevent an employer from acquiring knowledge ... of alleged uncompensated overtime hours." *Id.*

violations by his supervisors. (Dkt. 12-1 at 1-12.) In response, Mr. Covert maintains his own Declaration and deposition testimony as well as that of four of his co-workers raises a question of fact as to whether ITT knew they were working uncompensated overtime. (Dkt. 15 at 7.) ITT continues to challenge the sufficiency of these Declarations; pointing out that Mr. Covert admitted in his deposition that he did not file any complaint regarding the overtime hours or otherwise notify ITT. (Dkt. 16 at 4-9.)

In these materials, Mr. Covert and his co-workers assert they were instructed by their superiors to not record any overtime hours on their written timecards and to keep track of any overtime separately for which they would receive comp time later. (Dkt. 15-2 through 15-6.) Based on the record as it currently stands, the Court finds a genuine issue of material fact had been raised as to whether ITT knew or should have known Mr. Covert had been uncompensated for overtime work he performed. The claim by Mr. Covert, corroborated by his co-workers, that he was allegedly instructed by his supervisor to omit his overtime hours from his timecard could be determined to constitute knowledge on the part of ITT. As stated above, the Court finds the materials provided by Mr. Covert are sufficient for purposes of this Motion to raise questions of fact on this issue. Whether the jury ultimately agrees with the testimony of these witnesses over the evidence and testimony offered by ITT must be resolved at trial.

Having found Mr. Covert has satisfied his obligation under Rule 56 to raise a genuine issue of material fact, in order to prevail on it's Motion ITT has the burden to show, as a matter of law, that the evidence of the precise amount of work performed or evidence negates

the reasonableness of the inference to be drawn from the employees' evidence. *Mt. Clemens Pottery*, 328 U.S. at 687-88. ITT has not done so here. ITT has raised questions of fact as to the reasonableness of Mr. Covert's allegations that he always worked during his lunch hour and beyond his scheduled shift hours. ITT has not, however, demonstrated as a matter of law that Mr. Covert's claim should be summarily dismissed. The Motion for Summary Judgment is denied on this basis.

**2.     Sworn Declaration**

ITT challenges that the statements made in the sworn declaration signed by Mr. Covert on March 30, 2009 forecloses his claim for unpaid overtime. (Dkt. 12-1 at 12.) That document states that during his employ with ITT, Mr. Covert knew he was entitled to overtime pay, how overtime pay was to be calculated weekly, that he was to accurately record his hours worked each day on his timecard, that the hours he worked were accurately reflected on his timecards, and he had been paid for all of the time he had worked including overtime. (Dkt. 12-9, Ex. G.) These statements, ITT argues, directly contradict his present FLSA claim. Mr. Covert responds that he signed the declaration under duress and has admitted the statements in that declaration are false. (Dkt. 15 at 8-9.) Further, Mr. Covert argues the fact that his prior declaration is inconsistent with his later deposition testimony is a credibility determination that should be made by the fact finder. This issue requires the Court's consideration of the sham affidavit rule which, in the Ninth Circuit, is that the "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale v. International Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Van Asdale*, 577 F.3d at 998 (quoting *Celotex Corp.*, 477 U.S. at 327 (internal quotation marks omitted)). Some form of the sham affidavit rule is necessary to maintain this principle otherwise, "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)) (citation omitted).

"[H]owever, it must be recognized that the sham affidavit rule is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. Aggressive invocation of the rule also threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys." *Id.* (citations omitted). Thus, the rule should be applied with caution. *Id.* at 999.[5] The Ninth Circuit cautions that:

> We conclude that the...rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather, the...court was concerned with "sham" testimony that flatly contradicts earlier testimony in an attempt to "create" an issue of

---

[5] "Other circuits...have urged caution in applying this rule." *Kennedy*, 952 F.2d at 266 (discussing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980), *Camfield Tires v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983), *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985), *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

> fact and avoid summary judgment. Therefore, before applying the [rule], the district court must make a factual determination that the contradiction was actually a "sham."

*Kennedy*, 952 F.2d at 266-67. When confronted with an inconsistent declaration, the question this Court must resolve was whether or not the later declaration is an attempt to create a "sham issue of fact" or if the later declaration is merely the result of "an honest discrepancy, a mistake, or the result of newly discovered evidence...." *Id.*

Two important limitations have been placed upon the district court's discretion to invoke the sham affidavit rule. First, the rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony," but, rather, "the district court must make a factual determination that the contradiction was actually a sham." *Van Asdale*, 577 F.3d at 999 (quoting *Kennedy*, 952 F.2d at 266–67). "Second, our cases have emphasized that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-99. Thus, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id.* (citing *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995)).

In this case, the Court concludes the March 30, 2009 declaration does not foreclose Mr. Covert's FLSA claim. Though his statements in the sworn declaration are contradictory to his FLSA claims, Mr. Covert's deposition testimony reveals that he has not attempted to

create a "sham." In his deposition, Mr. Covert clarified his motivation for signing the declaration was to "save his job" and he explained at length why he knowingly made a false statement under oath in the declaration relating to the overtime pay and accuracy of his timecards. (Dkt. 12-3, Ex. A at 59-63.) In fact, Mr. Covert admits to making false statements in signing the declaration. (Dkt. 12-3 at 61.) In doing so, Mr. Covert has explained why he signed the declaration and the Court finds no sham has been attempted here. (Dkt. 12-3, Ex. A at 62-63) (Dkt. 15-2 at ¶ 9.) That being said, the vacillation between the statements in the signed declaration and Mr. Covert's current position in his FLSA claim impacts his credibility. Whether the jury ultimately believes Mr. Covert or not is a determination that must be made at trial; it is not a basis for granting summary judgment. The Motion for Summary Judgement is denied on this basis.

### 3. Weeks with less than 40 hours worked

Pointing to his Statement of Undisputed Facts, ITT argues Mr. Covert has conceded that he is not able to prove he is entitled to overtime compensation for the 43 weeks where he worked less than 40 hours because he took sick leave, vacation, time and/or holiday time. (Dkt. 16 at 2) (citing Dkt. 15-1 at 3.) In his response to ITT's Statement of Undisputed Facts, Mr. Covert "admits that SUF 31 is correct and that in 43 weeks, Covert would not have incurred any uncompensated overtime, leaving approximately 80 weeks during which Covert asserts he worked, on average, 5.5 hours of unpaid overtime. (Dkt. 15-1 at 3) (citing Dkt. 15-

2, Covert Aff at ¶ 8.)[6] Based on Mr. Covert's concession, the Court finds the undisputed facts

in this case prove, as a matter of law, that Mr. Covert cannot meet his burden to show his

work hours exceeded 40 hours for the 43 weeks identified in ITT's briefing. The Motion is

granted in this respect. As such, as a matter of law, Mr. Covert cannot raise a claim under the

FLSA for these 43 weeks and the Motion for Summary Judgment is granted. Mr. Covert will

not be allowed to pursue overtime pay for the 43 weeks identified herein.


4.      **FLSA Statute of Limitations**

"The statute of limitations for overtime claims under the FLSA is two years, or three

years for willful violations." *Ulin*, 2011 WL 723617, at *14 (citing 29 U.S.C. § 255(a)).

"[A]n employer has not committed a willful violation unless it knew or showed reckless

disregard for the matter of whether its conduct was prohibited by the FLSA. If an employer

acts reasonably in determining its legal obligation, its action cannot be deemed willful. If an

employer acts unreasonably, but not recklessly, in determining its legal obligation, then it

would not be deemed willful." *Id.* (discussing *McLaughlin v. Richland Shoe Co.*, 486 U.S.

128, 130-131 (1988)); *see also Solis*, 709 F.Supp.2d at 858 ("Although the statute of

limitations is normally two years for cases brought under the FLSA, a three-year statute of

limitations applies to employers whose violations are willful. 29 U.S.C. § 255(a). A violation

is considered "willful" if the employer knew or showed reckless disregard as to whether its

---

[6] "SUF 31" refers to paragraph 31 of ITT's Statement of Undisputed Facts which is the table of 43 weeks in which Mr. Covert took some kind of leave. (Dkt. 13 at ¶ 31.) This table is included in both ITT's Memorandum in Support and Reply Memorandum. (Dkt. 12-1 at 16 and Dkt. 16 at 2.)

conduct violated the Act.").

ITT contends that any overtime claims preceding August 6, 2008 should be barred by the two-year statute of limitations for FLSA claims because there is no evidence ITT knew of the unpaid overtime and, therefore, any violations were not willful. (Dkt. 12-1 at 16-17 and Dkt. 16 at 4.) ITT again points out it has an overtime policy in place against unauthorized overtime and that Mr. Covert was paid for authorized overtime under that policy. ITT further argues, no one at ITT told Mr. Covert he was required to work overtime and Mr. Covert never notified anyone at ITT that he was always working through his lunch hours or after his scheduled shifts. (Dkt. 12-1 at 17 and Dkt. 16 at 3.) Mr. Covert counters that ITT's knowledge regarding Mr. Covert's uncompensated overtime is a disputed issue of material fact precluding summary judgment. (Dkt. 15 at 7.) In support of his position, Mr. Covert cites to the expected testimony of his co-workers who, he argues, "will testify that Lorea Feldman [his supervisor] instructed him and other admissions representatives to not record their overtime" on their timecards, "multiple conversations with Lorea Feldman about receiving compensatory time off in lieu of overtime," and that there was a "pattern and practice" permitting overtime work that occurred on numerous occasions at ITT. (Dkt. 15 at 8.) Merely having a policy prohibiting unauthorized overtime, Mr. Covert asserts, is not enough. (Dkt. 15.)

The parties' arguments are much the same as raised previously as to Mr. Covert's burden under the FLSA to show ITT's knowledge that he worked uncompensated overtime. It is ITT's position that the record does not show it had knowledge of the over time because

it had an overtime policy which Mr. Covert knew of and had used to receive authorized overtime pay, he testified that no one told him he had to work overtime, and he failed to file any complaint alerting ITT that he was working overtime. (Dkt. 12-1 at 21.) Mr. Covert's position, on the other hand, is that ITT knew they were working unpaid overtime hours because the admissions representatives were told to not record hours over 40 per week unless they were authorized and that they would receive comp time for their overtime hours in the future. In addition to his own Affidavit, Mr. Covert filed the Declarations of Bridget Fries, Steve Grimes, Gerald Mayes, and Charles Mercier each of which states ITT supervisor, particularly Lorea Feldman, told her and the other admissions representatives not to write down any overtime on their timecards, unless authorized in advance, and that they would receive comp time for any unpaid overtime work not recorded on the timecards. (Dkt. 15-2 through 15-6.) For the same reasons as stated previously, the Court finds, upon the current record, a genuine issue of material fact exists as to whether ITT knew Mr. Covert was working unpaid overtime hours. The materials submitted by Mr. Covert draw into question ITT's knowledge based on the alleged direction the admissions representatives were given by their ITT supervisor in terms of recording overtime and alleged promises of future comp time. Though a jury may ultimately not believe these claims and conclude that ITT did not know of Mr. Covert's overtime hours, at this stage, the Affidavit and Declarations filed by Mr. Covert raise disputed issues of fact which preclude judgment as a matter of law. Accordingly, the Motion for Summary Judgment is denied on this point.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment (Dkt. 12) is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted as to the 43 weeks identified in ITT's Statement of Undisputed Facts at Paragraph 31. Mr. Covert will not be allowed to pursue his FLSA claim for those weeks. The Motion is denied in all other respects.

IT IS FURTHER ORDERED that the trial in this matter remains set for **December 6, 2011**. Counsel for the parties are encouraged to contact Judge Dale's chambers immediately to arrange a date and time for a settlement conference[7] to be held prior to the date of trial.

DATED:  **October 25, 2011**

Honorable Edward J. Lodge
U. S. District Judge

---

[7] A party can move for withdrawal from the settlement process upon a showing that reasons exist as to why the settlement conference would not be productive or otherwise should not a occur.